UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RYON ANDREW MITCHELL,

                                    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

                                    Defendant.

Case No.:  3:18-cv-276-MMA-NLS

**REPORT AND
RECOMMENDATION FOR ORDER**

**(1) DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT; and**

**(2) GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

**[ECF Nos. 11, 14]**

Plaintiff, Ryon Andrew Mitchell, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Social Security Administration's ("Defendant") final decision denying his claim for Supplemental Social Security Income benefits.  ECF No. 11.  This case was referred for a report and recommendation on the parties' cross motions for summary judgment.  *See* 28 U.S.C. § 636(b)(1)(B).

///

///

# I. INTRODUCTION

The parties agree that the only dispute at issue is whether the ALJ gave proper consideration to the opinions of Dr. Paniccia, a treating psychiatrist. *See* ECF Nos. 17 (Plaintiff's opposition and reply) ("This case comes down to whether the ALJ's rejection of the treating psychiatrist's, Dr. Paniccia, opinion of functional capacity is supported by substantial evidence and free of legal error"), 18 (Defendant's reply). In sum, Plaintiff challenges the decision of the ALJ to give little weight to Dr. Paniccia's records and conclusion that the Plaintiff was permanently disabled. ECF Nos. 11, 17. Defendant argues the Administrative Law Judge ("ALJ") provided reasoning for the decision to discount the opinion of Dr. Paniccia, finding the record "devoid of any significant psychiatric treatment records or probative evidence that would support such extreme limitations." Administrative Record ("AR") 29.

The Court agrees with Defendant that the ALJ gave adequate reasons for the decision to give little weight to Dr. Paniccia's opinion. Thus, after careful consideration of the papers submitted, the administrative record, the ALJ's decision, and the applicable law, the undersigned **recommends** the Plaintiff's motion for summary judgment be **denied** and the Defendant's motion for summary judgment be **granted**.

# II. BACKGROUND

## A. Procedural Background

Plaintiff protectively filed for social security benefits on September 30, 2013 and proceeded to a hearing before an ALJ. AR 38-39. The Social Security Administration denied Plaintiff's applications initially and on reconsideration. *See* AR 19. At Plaintiff's request, an ALJ, Robert Iafe, held a hearing on June 3, 2014. *Id.* The ALJ issued his decision on March 23, 2016, finding Plaintiff is not disabled within the meaning of the Social Security Act. AR 19-31. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 7, 2017, causing the decision to become final. AR 1-6. Plaintiff timely filed his complaint for judicial review on February 6, 2018. He asks the Court to reverse the ALJ's decision and award benefits. ECF No. 1.

## B. Plaintiff's Background and Testimony

Plaintiff was last employed in 2007 doing commercial telephone and telecommunications wiring, but was let go due to the downturn of the economy.  AR 45-47.  Plaintiff has a history of polysubstance abuse and drug dependence.  AR 81.

Plaintiff's initial disability application, submitted in 2013, made physical claims only.  AR 80 ("physical allegations only"), 81 ("Claimant does not allege a mental impairment").  He applied for disability based on seizures, stroke, degenerative disc disease, limited mobility on the right side, arthritis of the spine, and fractures, with a disability onset date of September 30, 2013.  AR 77.

Plaintiff currently lives with his mother and is not engaged in any activity, either work or volunteering.  AR 45, 48, 51.  He testified that she sets out his medications for him to take in the mornings and evenings.  AR 48-49.  Throughout the day and evening, Plaintiff does some floor exercises and stretching to align his back, his pain has "leveled off" but he needs to realign his back several times throughout the day.  AR 52-53.  Plaintiff will generally take between 6 and 8 hits of marijuana at an interval of about every two hours.  AR 52, 54-55.  He goes to bed between 2:30 a.m. and 5:00 a.m. and wakes around 10:00 a.m., usually achieving a maximum of five hours sleep.  AR 50.  A typical evening begins at 8:30 p.m. when he takes evening his medications, and spends the remaining time watching recorded news shows.  AR 51-54.  He testified that he has trouble with short-term memory and does not drive, his mother takes him to appointments as necessary.  AR 59.

During the hearing, the Plaintiff also testified a little regarding his depression.  He has tried several different anti-depressants, and believes the many changes in medication – despite his reporting of positive results from use – were due to interactions with his other prescribed medications.  AR 60-65.  To the extent he offered other testimony, it was simply that his day consists of "getting through day by day… hour by hour each day."  AR 52.

## C. Documentary Medical Evidence[1]

### 1. Beach Area Family Health Center- Primary Care

Plaintiff visits the Beach Area Family Health Center as his primary care provider, usually seeing a nurse practitioner or physician's assistant. Medical records submitted by Plaintiff indicate his first visit was October 5, 2012, for a blood pressure check and trouble swallowing. AR 283. He mentioned a history of depression and anxiety but it was not among his complaints. AR 283-284. At the next follow up, October 19, 2012, visit he complained of back and neck pain attributable to his jump off a five foot wall and his improper landing. AR 280. Plaintiff explained his spine had been out of alignment and causing neck and back pain since then. *Id.* At this visit, "depressive disorder" was listed among the "problems addressed" but none of the notes or medications indicate depression was a complaint, mentioned, or otherwise discussed. AR 280-282. Plaintiff had follow ups in November and December further addressing back or neck pain. AR 275-279. In February 2013, records indicate Plaintiff complained of back pain and requested refills. Though not addressed in the medical records as a point of discussion, depressive disorder was listed among the problems and this is the first time an anti-depressant appears to have been prescribed. AR 273-274.

The next record, March 11, 2013, indicates Plaintiff had been to the ER with a seizure and so he was referred to neurology for a consult. From April through October of 2013, Plaintiff had approximately monthly visits, mostly addressing follow up for seizures. The records from July and August of 2013 reflect complaints of fatigue and inability to do much apart from brush his teeth, but neither record includes "depressive disorder" among the problems. AR 263-268. The September appointment records reflect that Plaintiff had an appointment with a psychologist. AR 258.

---

[1] While the only dispute presented to the court is weight given to Dr. Paniccia's opinion, the court reviews the entire record because the ALJ relied on the record as a whole to some extent, and to address all mentions of depression or mental impairment presented to any physician.

By November of 2013, Plaintiff had started physical therapy and his complaints addressed only back pain with no mention of fatigue or depression. AR 300. Although his records indicated marijuana use as part of "social history" previously, this appointment appears to be the first time he reported marijuana use for pain and stress relief. AR 300. He was informed that continued marijuana use must stop if he wanted to continue with pain medication. AR 301.

At a January 14, 2014 appointment, Plaintiff's complaints included loss of appetite except after his marijuana use, fatigue, excessive sleep, and that it was too painful to exercise; but he was doing his physical therapy and planned to stationary cycle for exercise. AR 303. Plaintiff's mother attended this appointment and expressed concern for his mental health. *Id.*

Records suggest that Plaintiff did not return to the clinic again until March of 2015 at which time he complained of extreme fatigue and needed assistance from his mother to prepare meals as well as bathing and toileting. AR 348. Subsequent appointment notes indicate that he continued to complain of fatigue, and the doctors generally include depression among the findings. AR 348-362. By June 2015, Plaintiff's mother reports improvement and that Plaintiff is taking walks. AR 363. In July, an increase in keppra[2] appears to have cause adema in Plaintiff's legs and was addressed. AR 366-367. Plaintiff was noted in both June and July to be alert, in no distress, calm and coherent.

### 2. UCSD Neurology

Plaintiff was referred for a neurologic consult following new onset tonic-clonic seizures during his sleep. AR 220-221. A history of depression and anxiety were noted, but Plaintiff was neurologically assessed as "alert, attentive and cooperative. Oriented to person, place and time. Normal language output and comprehension. … Memory: intact- short and long term…." AR 221. An x-ray in May of 2013 revealed mild degenerative

---

[2] Keppra is an anti-epileptic drug that was prescribed to address and prevent seizures.

disc disease of the lower thoracic spine and moderate to severe degenerative disc disease of the lumbar spine, but "no evidence of mechanical instability." AR 242.

At a follow up visit on June 25, 2013 he was given the same "alert, attentive and cooperative" assessment. His MRI was reviewed and revealed "small cortical strokes" but since being prescribed keppra had no seizures since then. AR 225-226. He complained of back pain and was referred to an orthopedist and to continue the instructions of his primary care provider. *Id.* By Plaintiff's October 2013 follow-up, fatigue was his primary complaint and he mentioned memory loss, but denied any depression or anxiety. AR 234. He was encouraged to take up fatigue and pain management with his primary care physician. AR 237.

### 3. Drs. Spellman and Adamo – State Agency Examining Physicians

In December 2013, Dr. Spellman reviewed the medical records and concluded that there was no evidence of persistent severity from the seizures or other physical medical claims, and that any affective disorders were secondary and non-severe. AR 79-82. Dr. Spellman concluded Plaintiff had the residual functional capacity to do light work: could stand or sit for about 6 of an 8 hour work day, could lift between 10 and 20 pounds, could push or pull, but did have postural limitations such that he should never climb ladders/scaffolds or crawl, and should only occasionally engage in other "posturals" (i.e. kneel, balance, stoop, climb ramps or stairs), and had limited use of his right hand. AR 84-86.

### 4. Drs. Masters and Winslow - State Agency Examining Physician Reconsideration

On reconsideration, Dr. Masters agreed with the prior conclusions that any seizure disorder was controlled with medication, physical back pain did not cause a loss of control of muscle or nerve damage and is controlled with medication. AR 98. Reviewing mental health symptoms and new allegations of exhaustion and difficulties handling personal care (AR 92), Dr. Winslow found inconsistencies such as allegations of memory problems not supported in the screening exam and no apparent separate

depressive disorder and concluded Plaintiff's condition was non severe. AR 94. Dr. Masters concluded that "though you may experience mental health symptoms and conditions at times, your records show you are able to think, communicate, and act in your own interest." AR 98. Thus, on reconsideration Plaintiff was found capable of light work. *Id.*

### 5. Dr. Paniccia -Psychiatrist

Plaintiff first saw Dr. Paniccia in March of 2014, explaining that he had been exhausted and unmotivated for nearly the whole year since his seizure/stroke. AR 317. He reported taking 2-3 hits[3] of THC/marijuana per night and staying up until 3:00 or 4:00 a.m., and then sleeping until about 11:00 a.m. *Id.* Plaintiff also reported poor appetite, concentration, focus and memory, as well as feeling guilty, worthless, hopeless, and overwhelmed. *Id.* Plaintiff acknowledged he was in the midst of his second social security appeal. *Id.* At the initial evaluation, Dr. Paniccia characterized the Plaintiff's thought content as "LNWL" [life not worth living] but without suicidal plan, intent, or urges; but his affect was within normal limits; and insight, judgment, and impulse control were all assessed as "good." AR 320. Plaintiff was assessed as "oriented x4" with organized thought process. *Id.* Dr. Paniccia diagnosed a major depressive disorder, recurrent and severe, and prescribed viibryd. AR 321.

At the next visit on May 5, 2014, Plaintiff appeared "brighter." AR 316. Plaintiff reported his social security appeal had been denied again and that "ADL's" [activities of daily living] took "a whole day to do." Plaintiff reported he had been sleeping okay but continued to be up late, appetite was on and off and energy remained low. *Id.* Dr. Paniccia maintained the prescription for viibryd and added abilify. *Id.*

On June 30, 2014, Plaintiff indicated he was not feeling better, back pain continued, and he was fatigued all day and not sleeping well. AR 315. Appetite was

---

[3] It is unclear if Plaintiff had increased his usage by the time of the hearing before the ALJ where he reported 6-8 hits throughout the day/night, or if he under-reported his usage to Dr. Paniccia.

improving, but "can barely do ADL's." Plaintiff indicated that his doctors wanted him "off sedating meds." Dr. Paniccia continued with the prescription viibryd and increased abilify.

The next appointment's notes on August 25, 2014 state only, "Cx- ill." AR 314. It is not clear if Plaintiff appeared for this appointment at all. Notes attached to a prescription refill for viibryd the following month indicate Plaintiff "has done well on this novel compound for the last 6 months." AR 333.

On October 20, 2014, Plaintiff complained of difficulty walking, and that it was hard to bathe or eat due to decreased range of motion and pain. AR. 313. Plaintiff reported himself as inactive, exhausted, and watching TV all day. *Id.* Plaintiff stayed up until 3:00 a.m., then slept until 4:30 a.m., and then dozed until later in the morning. *Id.* Dr. Paniccia continued his diagnosis of depression and switched the prescription to fetzima. *Id.* Plaintiff was "doing well on fetzima" as of November 21, 2014 when his prescription was re-filled. AR 332.

By January 5, 2015, Plaintiff was also seeing Dr. Navarro for pain management. AR 312. Plaintiff reported the fetzima was ineffective, that he had poor energy, low focus, and continued feelings of hopelessness, worthlessness, guilt and being overwhelmed. *Id.* Plaintiff's mood was assessed as sad but thought processes were organized. *Id.*

On February 23, 2015, Plaintiff reported he was "not good." AR 311. His mother reported that he improved as the day went on. *Id.* Plaintiff indicated he tried to do some exercises, and that he continued to stay up late and sleep most of the morning. *Id.* He reported his energy as poor and that he had no appetite. *Id.* Dr. Paniccia continued to assess Plaintiff as depressed, and increased the prescription for Cymbalta; Plaintiff declined one on one treatment. *Id.* This was the last visit for which Plaintiff appeared.

On April 22, 2015, Plaintiff did not show up for his appointment and when Dr. Paniccia called, Plaintiff's mother indicated they "got lost and went home." AR 310. On May 16, 2015, in apparent response to Dr. Paniccia's call after missing the morning

appointment, Plaintiff's mother cancelled the appointment.  AR 309.  There are no further treatment records.

### 6. Dr. Navarro – Pain Management

Plaintiff began seeing Dr. Navarro for pain management in June of 2014, and presented complaining of "constant" severe pain.  AR 392.  As of his November 10, 2014 appointment his pain was rated 8 of 10 on the visual analog scale [VAS].  AR 324. Plaintiff was eventually approved for thoracic epidural steroid injections.  AR 388-391. He received the first injection on December 18, 2014.  AR 390.  At his next appointment for a second injection on January 6, 2015, he reported pain at only 5 out of 10, but also stated he did not "recall improvement with the last injection."  AR 396.  At the time of the third injection on March 16, 2015, pain remained at 5 out of 10 and Plaintiff again reported he did not "recall improvement" but his caregiver contradicted him, reporting it did help a bit.  AR 398.

In April, conditions worsened a bit, but Plaintiff began receiving "mbb inj" [medial branch block injections].  Plaintiff reported pain as 8 of 10 at the appointment for his first injection on April 2, 2015 appointment, but receded to 5 of 10 by the April 21 visit/injection.  AR 401, 403.  As of May 5, 2015, pain remained at 5. AR 405.

At the June 5, 2015 appointment with Dr. Navarro, Plaintiff's pain was reduced to 3 out of 10 and felt only 30-60 percent of the time and described the pain as "dull."  AR 407.  Plaintiff "had a 25-40% improvement overall with his mbb injections." AR 407. Dr. Navarro noted that at this appointment Plaintiff was "comfortable, not fatigued, and no apparent distress.  The patient is demonstrating no depression, or anxiety today."  AR 408.  He was described as "well groomed, well developed, under no apparent distress." *Id.*  The patient was instructed to return if pain returned to greater than 5 out of 10.  *Id*.

### 7. Dr. Paniccia's Mental Residual Functional Capacity Assessment

On October 7, 2015, the day before the hearing with the ALJ—and based on records, without having seen Plaintiff for at least seven months including during any portion of the time Plaintiff received the medial branch block injections—Dr. Paniccia

completed a Mental Residual Functional Capacity Assessment, concluding that Plaintiff was "permanently disabled." AR 414-417.

Dr. Paniccia assessed Plaintiff's memory and understanding as moderately to markedly limited, relying primarily on his poor memory and one time inability to find his way to the office. AR 414, 416. As to sustained concentration and persistence, Dr. Paniccia opined that Plaintiff's chronic pain and depression affected his attention, energy and stamina, making him unable to complete a regular work schedule or regularly complete even simple tasks. *Id.* Dr. Paniccia thought Plaintiff had limited ability to socially interact in a workplace based on his tendencies to isolate, is easily irritable, and because Plaintiff's mother usually did most of the talking during appointments. *Id.* And finally, Dr. Paniccia assessed Plaintiff's ability to adapt to changes in a work setting as low due to being depleted by chronic pain and depression. AR 417. Following the hearing before the ALJ, Dr. Paniccia submitted a supplement indicating that he believed Plaintiff's marijuana use had no negative impact, to the contrary that it "appears to help his depression, anxiety and pain" and that he changed the prescriptions several times because Plaintiff only achieved partial response to the anti-depressants viibryd and fetzima. AR 419.

### 8. *Dr. Santoyo's Physical Capacities Evaluation*

On September 18, 2015, Dr. Santoyo completed a physical capacity evaluation. AR 411-412. Dr. Santoyo stated that Plaintiff had advanced spondylosis of the entire spine and thus concluded Plaintiff was capable of sitting, standing or walking for one hour at a time and sitting for a total of 3 hours, and sitting and/or standing for one hour each, out of an 8 hour workday. *Id.* Plaintiff was assessed as being able to occasionally lift or carry 5 pounds, rarely 10 pounds, and never more than that. *Id.* Plaintiff should never push, pull, squat, crawl, climb or use foot controls, and should be restricted from heights, machinery, changes in temperature, and exposure to dust, fumes, or gases. *Id.* Plaintiff was assessed as being able to use his hands to grasp and for fine manipulation, but on the subsequent page listed as an action he could only do rarely. *Id.* Plaintiff was

given a moderate restriction for driving and would require frequent repositioning and rest breaks in Dr. Santoyo's opinion. *Id.*

## III. THE ALJ DECISION

### A. The Sequential Process

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least twelve months. 42 U.S.C. §§ 423(d), 1382c(a)(3). The Social Security regulations establish a five-step sequential evaluation to determine whether an applicant is disabled under this standard. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

At step one, the ALJ determines whether the applicant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(b). If not, then at step two the ALJ must determine whether the applicant suffers from a severe impairment or a combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(c). If the impairment is severe, at step three the ALJ must determine whether the applicant's impairment or combination of impairments meets or equals an impairment contained under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(a)(4)(iii), 416.920(d). If the applicant's impairment meets or equals a listing, he or she must be found disabled. *Id.*

If the impairment does not meet or equal a listing, the ALJ must determine the applicant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e). Then, the ALJ must determine at step four whether the applicant retains the residual functional capacity to perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(f). If the applicant cannot perform past relevant work, at step five the ALJ must consider whether the applicant can perform any other work that exists in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(g).

1
2
3

The applicant carries the burden to prove eligibility from steps one through four but the burden at step five is on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

## B. Substance of ALJ Decision

4
5
6
7

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 30, 2013, the application date. AR 21. He noted that Plaintiff had no recorded earnings since 2007. *Id.*

8
9
10
11
12
13
14
15
16

At step two, the ALJ determined Plaintiff had several severe impairments, including history of cerebrovascular accidents in 2013, degenerative disc disease of the lumbar, thoracic and cervical spine, an old compression fracture at T9, and an affective disorder. AR 21. The ALJ explained that these impairments more than minimally affect ability to perform work functions, and that the finding of "severe non-physical impairment" (affective disorder) was not intended to constitute a finding of inability to sustain simple, repetitive tasks. *Id.* The ALJ considered all impairments, the self-described limitations, and subjective pain, in assessing residual functioning capacity. AR 22.

17
18
19
20
21
22
23
24
25
26
27
28

At step three, the ALJ found that the impairments did not meet or medically equal the severity of a listed/recognized impairment. AR 22. For the physical impairments, Plaintiffs' medical records did not contain the requisite diagnoses or specific imaging required to support a finding of a disabling disorder of the spine, i.e., "compromise of a nerve root …or the spinal cord". *Id.* Likewise, the medical records did not support a disability finding based on cerebrovascular events, which requires that three months or more after the incident there is either sensory or motor aphasia resulting loss of ability to communication or sustained disturbance of gross or dexterous movements. *Id.* As to mental impairments, the ALJ found that the medical records did not support a disability finding. AR 23. The ALJ noted moderate restriction in activities of daily living, only mild difficulties with social function, and moderate difficulties with concentration, persistence and pace, and no evidence of episodes of decompensation as described in the

regulations.  *Id.*  In the absence of two "marked" limitations or one "marked" limitation coupled with repeated episodes of decompensation, the paragraph B criteria for a disability based on mental impairment were not met.[4]  *Id.*

At step four, the ALJ found that the Plaintiff had the residual functional capacity to perform light work; occasionally balance, stoop, kneel, crouch, and climb ramps and stairs but cannot crawl and should never climb ladders, ropes, or scaffolding; with his right hand, can only occasionally reach in all directions or perform handling and fingering; and can understand, remember, and carry out simple instructions for simple tasks.  AR 24.

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged the intensity, persistence, of limiting effects of the symptoms were not supported by the record, and did not support a finding of disability.  AR 25.  The ALJ first found that objective diagnostic imaging and tests did not support a finding of disability.  AR 25-26.  He further concluded that objective medical tests coupled with opinion evidence did not support a finding of disability based on the physical issues listed in the application.  AR 26-28.  The ALJ then specifically addressed the mental impairment, depression, but found that the record lacked significant psychiatric treatment records that would support the extreme opinions of Dr. Paniccia, and noted that as of the June 2015 appointments with Dr. Navarro, Plaintiff appeared comfortable, not fatigued and without depression or anxiety.  AR 29.  Finally, the ALJ found that the record lacked evidence of treatment of the types usually associated with a finding a permanently disabled individual, and contained significant gaps.  AR 29-30.

The ALJ concluded that Plaintiff was not disabled, and that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  AR 30.

---

[4] The ALJ also considered the paragraph C criteria for a chronic affective disorder, but found no objective evidence to support the criteria.  AR 23.

## IV.   DISCUSSION

In challenging the ALJ's denial of benefits, Plaintiff argues the ALJ committed reversible error and did not base his decision on substantial evidence because he failed to properly consider the opinions of Plaintiff's treating psychiatrist, Dr. Paniccia.  ECF Nos. 11, 17.

### A.   Legal Standard of Review

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits.  42 U.S.C. § 405(g).  A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards.  *Batson*, 359 F.3d at 1193.  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quotation and citation omitted).  It is a "highly deferential" standard of review.  *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008).  If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld.  *Molina*, 674 F.3d at 1111.  It is not the court's job to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff.  *Batson*, 359 F.3d at 1193.

As a general rule, more weight should be given to the opinion of a treating doctor than to the opinion of a source who does not treat the claimant.  *Lester*, 81 F.3d at 830-31; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  The rationale behind giving a treating source's opinion greater weight is that "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Winans*, 853 F.2d at 647.  However, an ALJ may disregard a treating source's opinion whether or not that opinion is contradicted.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Where a treating doctor's opinion is not contradicted by another doctor, a commissioner can only reject the

treating doctor's opinion for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If the treating source's opinion is contradicted by another source, the general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations. *Winans*, 853 F.2d at 647. When there is a conflict between the opinions of a treating source and an examining source, the Ninth Circuit requires that, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *see also Lester*, 81 F.3d at 830-31.

When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Tonapetyan*, 242 F.3d at 1149; *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings."); *Molina*, 674 F.3d at 1111-12 (noting an "ALJ may 'permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions'" (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996))). The more consistent a medical opinion is with the record as a whole, the more weight it is given. *See* 20 C.F.R. § 404.1527(d)(4). A treating source's opinion on the nature and severity of an impairment is given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. § 404.1527(d)(62). The opinion of a consultative examiner that rests on the examiner's own independent examination and clinical findings can alone constitute substantial evidence for rejecting a conflicting opinion from a treating source. *See Tonapetyan*, 242 F.3d at 1149. It is then solely the province of the ALJ to resolve the conflict. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the opinion of Dr. Paniccia that Plaintiff is "permanently disabled" or otherwise completely unable to maintain any form of regular work is contradicted by the opinions of the other doctors, including Dr. Santoyo,[5] Dr. Navarro[6] and the examining doctors.[7] However, as will be explained, the court finds that the ALJ's reasoning and decision to give little weight to Dr. Paniccia's opinion meets both the "clear and convincing" and "specific and legitimate" reasons standards.

### B. The ALJ Properly Considered the Opinions of Dr. Paniccia

In Dr. Paniccia's mental residual functional capacity of assessment of Plaintiff, he opined that Plaintiff "lacked the mental abilities and aptitudes need to engage in any work activity." AR 29. Dr. Paniccia assessed the Plaintiff as having marked limitations with understanding, memory, concentration, persistence, social interaction and adaptation, but moderate limitations with short and simple instructions, interactions with the public, and keeping aware of hazards. *Id.* Dr. Paniccia thought Plaintiff unable to perform even part time work on a limited basis. *Id.*

In comparing the state examining physicians' conclusions on RFC to the ALJ's final determination, the ALJ properly considered the opinion of Dr. Paniccia. While he gave great weight to the state agency examiners physical findings due to their findings being consistent with the record as whole, the ALJ parted ways with their conclusions of no severe mental impairment. AR 28. Thus, the ALJ properly found that "later evidence supports the finding of a severe mental impairment." *Id.* However, the ALJ did not agree with the assessments presented by Plaintiff regarding persistence, intensity, and limiting effects. AR 25.

[5] Dr. Santoyo's assessment, taken in its entirety, while recommending very light work and frequent repositioning, would have still permitted part time work up to a total of five hours per shift. AR 411.
[6] Dr. Navarro's treatment notes in June of 2015 conclude the Plaintiff is "comfortable, not fatigued, and [in] no apparent distress. The patient is demonstrating no depression, or anxiety today." AR 408.
[7] Examining physicians concluded that Plaintiff could engage in exertionally light activity that mental impairments were non-severe. AR 83-86, 94-98.

The ALJ gave little weight to the "extreme opinion" of Dr. Paniccia for several reasons that were each then expounded upon in the decision.  AR 29.  First, the ALJ noted that Dr. Paniccia's records reflected that he had not seen the patient recently at the time he completed the mental residual function capacity assessment.[8]  AR 29.  The ALJ cited to Dr. Paniccia's treatment records noting they "lack severely in longevity or chronicity."  *Id.*  This is supported by the record, which reflects Dr. Paniccia saw the Plaintiff for a total of 6 appointments and one evaluation, and appears to have had a few phone call follow ups, primarily for the purposes of refilling prescriptions.  *See* AR 322-324.  Further, the ALJ noted that Plaintiff abandoned Dr. Paniccia's care and did so around the same time that his pain treatments from Dr. Navarro were taking place and appeared to be effective.  AR 29-30.  Especially considering that some of Dr. Paniccia's conclusions relied on energy depletion from chronic pain, the ALJ's reference to the effectiveness of pain treatment reflected in Dr. Navarro's records that were never considered by Dr. Paniccia provides both a clear and convincing, as well as a specific and legitimate, reason to discount the opinion of Dr. Paniccia as inconsistent with other substantial evidence of record.[9]  *See* 20 C.F.R. § 404.1527(d)(62).  Resolving ambiguities and inconsistencies in the record is squarely within the province of the ALJ.  *Vasquez v. Astrue*, 547 F.3d at 1104.

Second, the ALJ found the record was "devoid of any significant psychiatric treatment records or probative evidence that would support such extreme limitations."  AR 29.  This is an accurate assessment, as Dr. Paniccia's notes consistently find

---

[8] The ALJ references the last appointment as November 2014.  AR 29.  The records are not clear, as there are appointment notes from a February 2015 appointment.  AR 311.  The Court concludes this is a harmless error because even assuming a February appointment the time lapse from seeing Plaintiff to the date of the opinion remains substantial, and in light of the other reasons provided.  *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).

[9] The abandonment of treatment and inconsistent observations of Dr. Navarro are not addressed by Plaintiff.  *See* ECF Nos. 11, 17.

Plaintiff's thought content organized, find that he holds much the same schedule every day; but in the RFC finds that Plaintiff would be unable to maintain a work schedule or ordinary routine, and may even have "moderate" limitations following short and simple instructions. The Plaintiffs' testimony at the hearing demonstrates that he is capable of maintaining focus and attention long enough to advocate on his own behalf and respond to the ALJ's questions. *See* AR 32-75. Nor does Dr. Paniccia recommend or refer Plaintiff to any psychologist for concurrent treatment, or see the Plaintiff more than 6 times, to address what Dr. Paniccia later concludes is "disabling" depression. Dr. Paniccia's initial evaluation states Plaintiff should "consider 1:1 [one on one] treatment," but it is not raised again until nearly a year later, when Plaintiff declined it. AR 311, 321. Apparently, Dr. Paniccia did not find Plaintiff's condition was so severe as to require one on one treatment – which is inconsistent with his conclusion that Plaintiff's depression was so severe as to constitute a permanent disability. As Defendant points out, the ALJ may consider "lack of mental health treatment when considering the intensity, persistence and limiting effects of [a claimant's] symptoms." *Hensley v. Colvin*, 600 Fed. Appx. 526, 527 (9th Cir. 2015) (unpublished); *see also Soc. Sec. Rul. 16-3p Titles II and Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (Oct. 25, 2017) ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, … we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). This constitutes a clear and convincing, as well as specific and legitimate, reason to discount Dr. Paniccia's opinion.

The ALJ goes on to address other absences in the record:

> In addition, the record is devoid of evidence reflecting treatment of the types one would expect for a totally and permanently disabled individual. There does not appear to be any evidence of an orthopedic consultant or significant physical therapy usually seen before referring an individual to a pain medicine specialist. In fact, the record is fairly meager of evidence of any significant treatment whatsoever, as well as

significant gaps in the claimant's history or treatment.  Finally,
but by no means exhaustively, review of claimant's earning
history shows no work activity since 2007, six years before the
alleged onset date, which raises a question as to whether the
claimant's continuing unemployment is actually due to medical
impairments.

AR 30.  The burden is on the Plaintiff/claimant to establish a disability and Plaintiff's

medical record had significant gaps as noted by the ALJ throughout the decision, some of

which call into question credibility.  For instance, the ALJ noted that after being told that

his marijuana use must cease to continue with pain medication, Plaintiff's subsequent

urine toxicology report is missing from the medical record.  AR 26 ("It appears the record

does not contain the record of the urine toxicology test ordered by Dr. Zahler or other

potential or probably medical evidence from Beach Area Family Health from January

2014 – March 2015.").  The records from Plaintiff's primary care provider, Beach Area

Family Center, intermittently address depression but contain significant gaps.  *See also,*

AR 27 ("It would appear that there is much probative medical evidence not in the record.

It is not clear why this is so."); AR 28 ("it is not clear what Dr. Gaines's treatment

relationship is, as there does not appear to be any evidence in the record with his name on

it."); AR 29 ("The claimant was reportedly going to have a psychiatric consult in July

2015; however this consult apparently did not occur since there is no evidence of this

consult in the record.").  Similarly, the record does not reflect significant physical

therapy, more than the 7 in-person visits with a psychiatrist, or any evidence of the past

psychological treatment to substantiate Plaintiff's claim that 10 prior anti-depressants

were ineffective.  *See* AR 331-335.  Based on the record as a whole, the Court agrees that

it is not as complete or developed as most records are for a person claiming complete

disability, and this is a clear, convincing, specific, and legitimate reason for the ALJ to

question the Plaintiff's claims of persistence and functional limitations when all Plaintiff

offers is internally inconsistent opinion of Dr. Paniccia and no other significant and

complete supporting evidence of debilitating mental impairments.

The ALJ's credibility notation is also significant. Plaintiff has been out of work since 2007 and did not file a social security application until 2013. There is a question of whether Plaintiff's inability to find employment is due to medical impairments and the ALJ may properly consider this in assessing credibility, and thus, Plaintiff's claims regarding persistence, intensity, and limiting effects. *See Sherman v. Colvin*, 582 Fed. Appx. 745, 748 (9th Cir. 2014)(unpublished) (ALJ could consider both sporadic work history and marijuana use); *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir.2001) (stating that in making a credibility determination, ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured).

Third and finally, the ALJ noted that a determination of "permanent disability" is reserved to the Social Security Commissioner. AR 29. The ALJ was well within his authority to reject Dr. Paniccia's ultimate conclusion. *See* 20 C.F.R. § 416.927(d)(1); *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) (the ALJ was not required to defer to a physician on the ultimate determination of disability).

The Court finds that the ALJ gave proper weight to the opinion of Dr. Paniccia. The ALJ did not reject the opinion entirely, he found a severe mental impairment. AR 28. However, he also concluded that persistence, intensity, and limiting effects claimed by Plaintiff were not supported by the records. AR 25, 29. As discussed, this is borne out by review of the records: Plaintiff's treatment records at Beach Family Health, UCSD, and with Drs. Navarro and Paniccia, always noted he was oriented, alert, thought processes were consistently assessed as organized or intact, including throughout his visits with Dr. Paniccia. *See generally,* AR 221, 273, 309-335, 358, 385, 388. Once his pain was managed, he did not appear depressed to his treating doctor, Dr. Navarro. AR 408. By his own testimony, his pain had "leveled off" by the time of the hearing, and per Dr. Navarro's treatment records was a "dull" pain at 3 out of 10. AR 52, 407-408. Thus, the ALJ found that unskilled light work, with postural limitations, and limited to short, simple tasks, was appropriate for Plaintiff. This conclusion appears to take into consideration Dr. Paniccia's notation that Plaintiff was only moderately limited in his

ability to interact with the public and follow, remember, and carry out simple instructions. AR 414. This is quite different from the assessment of the state agency physicians who found no communicative or environmental limitations. AR 85, 96. The court also notes the ALJ largely adopted the conclusions of Dr. Santoyo with respect to postural limitations and physical abilities. *See* AR 411-412.

In sum, the ALJ cited to clear, convincing, specific, and legitimate reasons based on substantial evidence to give little weight to the opinions of Dr. Paniccia, and properly considered all evidence in the record in coming to the conclusion that Plaintiff is not disabled. The arguments raised by Plaintiff point to questions of credibility, conflicts and ambiguities in medical records, and contradicted evidence susceptible to reasonable interpretation, all of which were properly addressed and resolved by the ALJ in his decision, and are not susceptible to re-interpretation by the court. *Vasquez v. Astrue*, 547 F.3d at 1104; *Molina*, 674 F.3d at 1111.

## IV. CONCLUSION

The court finds that the ALJ's decision to deny Plaintiff's benefits is supported by substantial evidence. Accordingly, the court **recommends** that Plaintiff's motion for summary judgment be **denied** and that Defendant's cross motion for summary judgment be **granted**.

///
///
///
///
///
///
///
///
///
///

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties on or before **February 14, 2019**. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before **February 28, 2019**. The parties are advised that any failure to file objections within the specified time may waive the right to raise those objections on appeal of the court's order. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 30, 2019

Hon. Nita L. Stormes
United States Magistrate Judge

3:18-cv-276-MMA-NLS